TUTTLE & WAKEFIELD *v.* THE EXCHANGE BANK OF FORT VALLEY.

1. In a claim case, evidence tending to show that the defendant in execution had purchased the property levied on, not for himself, but as the agent of another, that the claimant had advanced the money to pay for the property under a contract with the agent that the title should be in the claimant until reimbursed for the money so advanced, and that such reimbursement was to be made by the principal of the agent making the purchase, is admissible in favor of the claimant as a part of the history of the transaction under investigation, and should not be rejected as tending to show title in a stranger to the record.

2. The evidence showing that the title to the property levied on was not in the defendant in execution, but was for the time being in the claimant as security for the purchase money which the claimant had advanced and which was to be refunded by the person for whom the defendant in execution acted as agent in purchasing the property, there was no error in adjudging that such property was not subject to the execution.

January 4, 1893.

Claim. Evidence. Title. Before Judge MILLER. Houston superior court. October term, 1891.

W. H. HARRIS and W. A. MATTHEWS, for plaintiffs.

PRESTON & GILES, *contra.*

LUMPKIN, Justice.

Cheeves was engaged at Fort Valley in the business of buying cotton, not for himself, but for others. He

had made an arrangement with the Exchange Bank of that place by which the bank was to pay for such cotton as he might purchase upon orders received from his customers, upon the express contract that the title to the same should be in the bank until it was reimbursed for the purchase money so advanced. In pursuance of this contract, the warehouse receipts, which controlled the possession, were to be delivered to the bank in every instance before it furnished the money to pay for the cotton contracted for by Cheeves. For convenience, payments for the cotton were made by the bank upon checks drawn by Cheeves, the amounts of which were charged upon an account kept with him for this purpose, and this account was credited by all sums received by the bank from Cheeves' customers in payment of cotton bought for them. When cotton was shipped to such customers, the bills of lading issued by the railroad were turned over to the bank, and the possession thereof was retained by the bank until the money advanced had been repaid. As to the particular transaction now under review, it appears from the record that Strauss & Co., of Savannah, sent an order for the purchase of cotton to Gray Bros., one of the members of which firm was the president of the bank. Gray Bros. turned this order over to Cheeves for execution, who, in the usual course of his business as a cotton buyer, bargained for the cotton now in dispute. Payment therefor was made by the bank upon checks drawn by Cheeves, under the express understanding that the title to the cotton should remain in the bank until the money advanced was repaid; and in accordance with the contract between the parties, warehouse receipts representing the cotton were turned over to the bank. It appears that in previous transactions between these parties, similar to the one now in question, payment to the bank was made by a draft drawn upon Strauss & Co. by Gray

Bros. in favor of the bank, to which draft was attached the bill of lading issued by the railroad company upon the cotton being shipped to Savannah. In this instance, while the cotton was being loaded for shipment to Strauss & Co., and before the bill of lading had been issued to the bank by the railroad company, the cotton was levied on by the sheriff under a *fi. fa.* in favor of Tuttle & Wakefield as the property of Cheeves. After levy, the bank filed a claim, and upon the issue thus made, the case was submitted to the presiding judge, without the intervention of a jury, for a decision upon the law and facts. He adjudged that the property was not subject, and in our opinion, adjudged correctly.

1. When evidence was offered to show the facts above recited as to the order sent by Strauss & Co. to Gray Bros.; delivery of this order to Cheeves for execution; payment for the cotton by the bank, and the manner in which it was to be reimbursed for the money so advanced, objection was made thereto on the ground that it tended to show title to the property in dispute in a stranger to the record. We think the court properly overruled this objection and admitted the evidence. It was relevant and material as a part of the history of the transaction under investigation; and in connection with the other facts elicited, plainly manifested the contention urged by the claimant that Cheeves was not purchasing this cotton on his own account, but simply as agent for another. It was entirely consistent with and corroborative of the claim by the bank that it held the title to the cotton at the time of levy, and that the same had never been in Cheeves; and was properly admitted as explaining the manner in which the bank was to be reimbursed for the advances made by it, and to be divested of title upon such repayment. It therefore seems plain without argument that this evidence should have been received and given due weight by the court in determining the issue submitted.

2. From the condensed statement of the facts of this case already set forth, it is apparent that the title to the cotton in dispute was never in Cheeves, and never intended to be in him by any of the parties concerned. In this transaction he was the mere agent of Strauss & Co., appointed in the manner above stated to buy cotton for them. Having no money with which to pay for the cotton himself, he really procured the bank to purchase it for his principal and to retain title thereto until reimbursed by Strauss & Co. This arrangement would doubtless have been carried out but for the interference by the sheriff. The bank did not lend or intend to lend its money to Cheeves. It simply bought and paid for the cotton at his request, agreeing to allow Strauss & Co. to have the benefit of the purchase upon their reimbursing it for the money so advanced. The profits anticipated by the bank were only such as arose in the legitimate prosecution of its banking business, in the matter of exchange, etc. In view of the facts presented, a judgment subjecting this cotton to the execution of Tuttle & Wakefield would have been not only contrary to law and the evidence, but violative of every principle of justice and common honesty between man and man. Means *et al. v.* Bank of Randall, 13 Supreme Court Rep. 186.                    *Judgment affirmed.*